```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
RAMON GARCIA,                                         :
                                                      :
                              Plaintiff,              :    15 Civ. 7289 (KPF)
                                                      :
              v.                                      :    OPINION AND ORDER
                                                      :
PEARSON EDUCATION, INC. and PEARSON                   :
INC. OF NORTH AMERICA,                                :
                                                      :
                              Defendants.             :
                                                      :
------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 7, 2016

KATHERINE POLK FAILLA, District Judge:

Plaintiff Ramon Garcia ("Plaintiff" or "Garcia") brings this action against Pearson Inc. of North America ("Pearson Inc.") and Pearson Education, Inc. ("Pearson Education") (collectively, "Defendants"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17, and the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 to 301. Defendants have responded by moving to dismiss this action in part for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and to transfer the remaining claims to the United States District Court for the District of New Jersey. For the reasons set forth in this Opinion, the Court transfers this case to the District of New Jersey but declines to decide Defendants' motion to dismiss.

**BACKGROUND**[1]

**A.     Factual Background**

Plaintiff Garcia, a Hispanic man of Dominican origin, resides in New York City.  (SAC ¶¶ 5, 8).  In March 2004, Plaintiff began working at the Pearson Education Distribution Center (the "Distribution Center") in Cranbury, New Jersey, where he was employed until February 2016.  (*Id.* at ¶¶ 6, 9, 61).  Plaintiff began his tenure in the Distribution Center's Receiving Department, where he was responsible for accepting arriving packages and storing them in the warehouse.  (*Id.* at ¶ 9).  From 2004 until 2013, Plaintiff's job title changed, upon receiving promotions, from "Equipment Operator" (2004) to "Inventory Clerk" (2005), "Clerk III" (2006-09), "Operations Clerk" (2010-13), and again to "Inventory Clerk" (2013).  (*Id.* at ¶¶ 9-11).

In or about June 2011, Plaintiff was transferred from the Distribution Center's warehouse to its "office," where he worked as a recordkeeper and performed other clerical duties.  (SAC ¶ 13).[2]  Plaintiff's duties and surroundings changed significantly while working in the office; Plaintiff "work[ed] from his desk and chair all day, … in front of a computer, [with] his

---

[1] The facts throughout are drawn, as they must be in a motion to dismiss, from the operative complaint, Plaintiff's Second Amended Complaint ("SAC," Dkt. #20). *Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs*, 716 F.3d 10, 12 (2d Cir. 2013).  For convenience, Defendants' motion to dismiss and transfer venue is referred to as "Def. Br." (Dkt. #25-28); Plaintiff's response in Opposition as "Pl. Opp." (Dkt. #30); and Defendants' reply as "Def Reply" (Dkt. #31), all reflecting the pagination imposed by the Court's electronic filing system.  The Declaration of Tamara Willis in support of Defendants' motion (Dkt. #27), will be referred to as "Willis Decl."

[2] The timeline of Plaintiff's job duties at the Distribution Center is somewhat unclear, as he seemingly began performing clerical duties in the office while employed as (and after having worked for some time as) an "operations clerk."  Nonetheless, the Court relays the events as Plaintiff alleges them.

2

own telephone line, and [ ] in a comfortable [t]emperature, because air conditioning was used." (*Id.* at ¶ 14). Moreover, whereas most of the Distribution Center's warehouse employees were of Hispanic origin and spoke only Spanish, a large majority of the office workers were Caucasian and spoke only English. (*Id.* at ¶¶ 15-16).

In 2015, Plaintiff began working under a new supervisor, Ellen Farrell ("Farrell"), who is Caucasian. (SAC ¶¶ 17-18). At that point, only one other Hispanic employee, Mr. Vargas, worked in the office. (*Id.* at ¶ 19). Upon becoming Plaintiff's supervisor, Farrell began criticizing Plaintiff for speaking in Spanish while working; although Plaintiff never spoke Spanish directly to Farrell, he did occasionally speak Spanish to Vargas and to family members on the phone. (*Id.* at ¶¶ 20-22). Plaintiff informed Farrell of his understanding that company rules did not *prohibit* speaking Spanish; he also informed Farrell that he had been doing so for years prior to Farrell's employment at the Distribution Center, and that it had not diminished his work performance. (*Id.* at ¶ 23).

While Farrell "did not criticize any of the Caucasian office workers [for] speaking in Spanish," nor for speaking English, Farrell "retaliated against" Plaintiff when he did not cease speaking Spanish in the office. (SAC ¶¶ 24-26). Ultimately, Farrell ordered that both Plaintiff and Vargas return to working on the warehouse floor, despite Plaintiff's "satisfactory to excellent" evaluations while working in the office and his protestations that he did not think manual labor appropriate because of his age, high blood pressure, and vertigo. (*Id.* at

¶¶ 26-29).[3]  In contrast, the Caucasian office workers were not transferred to the warehouse floor, though Plaintiff had "more education and greater longevity [w]ith the company" than those employees.  (*Id.* at ¶ 31).

The criticism and warnings from Farrell continued even after Plaintiff returned to the warehouse floor (SAC ¶¶ 33-34), and Farrell "never offered a legitimate business reason" for transferring Plaintiff's duties (*id.* at ¶ 33).  Although Plaintiff explained to Farrell that he needed to speak Spanish to certain warehouse employees who did not speak English, she persisted that Plaintiff should not speak Spanish.  (*Id.* at ¶¶ 35-36).  Still more, Farrell demanded to know which newly hired warehouse workers could only speak Spanish, and she later "fire[d] a number of warehouse workers, merely because they could not speak English."  (*Id.* at ¶¶ 37-38).

When Plaintiff complained about Farrell's behavior, he was ignored or received vague answers.  (SAC ¶ 39).  Moreover, Plaintiff was "retaliated against for what he considered to be legitimate activities," such as:

> [i] complaining to officers and the board of directors at Pearson, Inc., North America, including their Chief Executive Officer[;] [ii] complaining to Occupational Safety and Health Administration (OSHA), about the failure to adequately inspect forklifts and other machinery at the Pearson Educational Distribution Center[;] and [iii] [ ] [f]iling a discrimination complaint with the EEOC.

---

[3]  Plaintiff later injured his back, and Farrell accused him of faking the injury.  (SAC ¶ 30).

4

(*Id.* at ¶ 41).  As a result of these actions, Plaintiff was suspended with pay twice in 2015, but was told only that the company "needed to conduct an investigation." (*Id.* at ¶ 40).  Plaintiff was "convinced that by suspending him for a second time, the leadership at the Pearson Educational Distribution Center hoped to make an example of him, by silencing him, humiliating him, [and] putting him on the defensive." (*Id.* at ¶ 43).

Further, during the summer of 2015, Farrell refused to turn on fans in the warehouse, without any explanation, while the office employees enjoyed air conditioning.  (SAC ¶¶ 44-46).  Also, Farrell refused to approve vacations of more than two weeks for Plaintiff and other Hispanic workers, whereas Caucasian office employees received "comparably long vacations." (*Id.* at ¶¶ 47-48).  Although "[u]pper management" at the Distribution Center was aware of Plaintiff's complaints (and those of other Hispanic employees), Vice President Glenn Cipriani told the employees that he "had confidence in [Farrell's] discretion over issues such as vacation times, general work conditions, and worker communication." (*Id.* at ¶¶ 50-51).

Plaintiff was also reprimanded by Farrell for complaining about discrimination, "oppression," and safety issues, including to another "team leader," Yuri Garcia.  (SAC ¶¶ 38, 52).  In one specific incident in June 2014, Farrell became angry after Plaintiff informed a safety manager, Hector Rivera, that the Distribution Center followed inadequate precautions for the use of forklifts.  (*Id.* at ¶ 53).  Soon after, Farrell accused Plaintiff of "ratting" on her,

5

and she threatened him with a written warning if he continued to take his blood pressure medication while at work.  (*Id.*).

Unsatisfied with the responses from the Distribution Center's leadership, Plaintiff complained via email "to leadership [at] the corporate parent, Pearson[] Inc., including their Chief Executive Officer, and their Board of Directors." (SAC ¶ 55).  In the email, Plaintiff described "unacceptable racist practice[s]" at the Distribution Center, including harassment by Farrell and fabricated written warnings against him.  (*Id.*, Ex. A).  In response, John Fallon, whom Plaintiff identifies as the CEO of Pearson Inc., stated, "[t]hank you for your email.  I have copied it to Melinda Wolfe, our head of Human Resources, and she will ensure we follow up thoroughly on your concerns."  (*Id.*).  However, Pearson Inc. "failed to correct the behavior" at the Distribution Center, "even though they were made aware of it."  (*Id.* at ¶ 57).

As a result of the above events, Plaintiff "suffered short term disability due to work related stress" from April 23, 2015, to June 23, 2015, and again from October 12, 2015, to December 22, 2015, and he was wrongly terminated on February 3, 2016.  (SAC ¶¶ 58, 61).  In consequence, Plaintiff seeks judgment for "compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, and any other damages permitted by law," in addition to attorneys' fees and costs.  (*Id.* at 11).

B.   **Procedural Background**

On August 24, 2015, Plaintiff received his right to sue letter from the EEOC (SAC ¶ 4), and on September 18, 2015, he filed the instant action,

alleging violations of Title VII and the NYSHRL (Dkt. #3).  On November 13, 2015, Defendants submitted a pre-motion letter seeking a conference regarding their anticipated motion to dismiss (Dkt. #8), and the Court held a conference to discuss the proposed motion on December 11, 2015 (Dkt. #13).  Following the conference, Plaintiff filed an Amended Complaint on January 22, 2016 (Dkt. #15), and thereafter, with Defendants' consent, filed the Second Amended Complaint on February 16, 2016 (Dkt. #20).

On March 8, 2016, Defendants filed the instant motion to dismiss and transfer venue (Dkt. #25-28), which Plaintiff opposed on April 8, 2016 (Dkt. #30).  Defendants then filed a reply on April 18, 2016 (Dkt. #31), concluding briefing on the motion.

## DISCUSSION

**A.   Applicable Law**

### 1.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "While *Twombly* does not

require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-60 (2d Cir. 2016) (discussing documents that may properly be considered in resolving a motion to dismiss).

## 2. Determinations of Venue Under Title VII and 28 U.S.C. § 1404(a)

Defendants challenge the appropriateness of venue in the Southern District of New York under both the venue provision of Title VII and the change of venue statute, 28 U.S.C. § 1404(a). As provided in the venue provision in Title VII:

> Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained or administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice[.]

42 U.S.C. § 2000e-5(f)(3); *see also Cook* v. *UBS Fin. Servs., Inc.*, No. 05 Civ. 8842 (SHS), 2006 WL 760284, at *3 (S.D.N.Y. Mar. 21, 2006) ("Venue over the Title VII claim … is not determined by the general venue statute, but rather is 'strictly governed' by 42 U.S.C. § 2000e-5(f)(3)." (citing *Templeton* v. *Veterans Admin.*, 540 F. Supp. 695, 696 (S.D.N.Y. 1982))); *see also Bolar* v. *Frank*, 938 F.2d 377, 378-79 (2d Cir. 1991) ("Almost uniformly, courts … have applied section 2000e-5(f)(3) to determine venue in employment discrimination actions premised on Title VII[.]").

However, while "Title VII contains its own statutory venue provisions, an action brought under the federal employment discrimination laws is still subject to transfer in order to maximize the convenience of the parties and witnesses and in the interests of justice." *Ayala-Branch* v. *Tad Telecom, Inc.*, 197 F. Supp. 2d 13, 14 (S.D.N.Y. 2002). In assessing whether a transfer to

9

another district is appropriate in the interest of justice under 28 U.S.C. § 1404(a), courts first determine "whether the action could have been brought in the transferee forum." *AEC One Stop Grp., Inc.* v. *CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 528 (S.D.N.Y. 2004) (internal citation omitted). If this first factor is met, courts generally consider the following non-exhaustive list of factors, including:

> [i] the convenience of witnesses, [ii] the convenience of the parties, [iii] the locus of operative facts, [iv] the availability of process to compel the attendance of unwilling witnesses, [v] the location of relevant documents and the relative ease of access to sources of proof, [vi] the relative means of the parties, [vii] the forum's familiarity with the governing law, [viii] the weight accorded the plaintiff's choice of forum, and [ix] trial efficiency and the interest of justice, based on the totality of the circumstances.

*Dealtime.com Ltd.* v. *McNulty*, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000). However, "[t]here is no rigid formula for balancing these factors and no single one of them is determinative." *Larew* v. *Larew*, No. 11 Civ. 5771 (BSJ) (GWG), 2012 WL 87616, at *3 (S.D.N.Y. Jan. 10, 2012) (citing *Citigroup Inc.* v. *City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (internal quotation marks and citations omitted)). And, "[i]n deciding a motion to transfer, a court may consider material outside of the pleadings." *Mohsen* v. *Morgan Stanley & Co., Inc.*, No. 11 Civ. 6751 (PGG), 2013 WL 5312525, at 83 (S.D.N.Y. Sept. 23, 2013); *see also Citibank, N.A.* v. *Affinity Processing Corp.*, 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003) (noting that a defendant may "support [a Section 1404(a)] motion with affidavits and other materials outside the pleadings").

10

As a general matter, "a plaintiff's choice of forum should not be disturbed unless the balance of factors tips heavily in favor of a transfer." *Rush* v. *Fischer*, 923 F. Supp. 2d 545, 556-57 (S.D.N.Y. 2013) (citing *Jasol Carpet, Inc.* v. *Patcraft Comm. Carpet, Inc.*, No. 96 Civ. 3064 (JGK), 1997 WL 97831, at *3 (S.D.N.Y. Mar. 6, 1997)); *see also Lykes Bros. Steamship Co.* v. *Sugarman*, 272 F.2d 679, 681 (2d Cir. 1959) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (internal quotation marks omitted)). However, where the moving party makes "a clear and convincing showing" that the factors militate in favor of a transfer, the Court may transfer the matter in the interest of justice. *Solar* v. *Annetts*, 707 F. Supp. 2d 437, 441-42 (S.D.N.Y. 2010) (citation omitted).

**B.    Analysis**

    **1.    The Court Declines to Decide Defendants' Motion to Dismiss**

In the first instance, Defendants seek dismissal of Plaintiff's NYSHRL claims as against both Defendants, on the grounds that (i) the NYSHRL "does not provide a plaintiff with a private civil remedy for out-of-state discrimination by foreign corporations" (Def. Br. 17-18); and (ii) Plaintiff failed to allege an employer-employee relationship with Pearson Inc., as is necessary for an NYSHRL claim (*id.* at 16-17). Notably, Plaintiff failed to address these arguments in his opposition papers, addressing only Title VII- and venue-related arguments. (*See generally* Pl. Opp.). As Plaintiff presented arguments in opposition to dismissal of other claims, but failed to address in any form the arguments for dismissal of his NYSHRL claims, the Court likely would consider

these claims abandoned by Plaintiff.  *See Blouin ex rel. Estate of Pouliot*, 356 F.3d 348, 363 n.9 (2d Cir. 2004) (finding claims abandoned where a plaintiff fails to provide any argument in response to them).

And in reviewing Defendants' motion to dismiss Plaintiff's Title VII claims against Pearson Inc., the Court perceived certain deficiencies in Plaintiff's SAC and in his opposition to Defendants' arguments.  First, with regard to Plaintiff's Title VII claims against Pearson Inc., Defendants press that Plaintiff fails to allege an employer-employee relationship sufficient to subject Pearson Inc. to Title VII claims.  (Def. Br. 13-16).  In response, Plaintiff proffers the low pleading standard articulated by the Second Circuit in *Littlejohn* v. *City of New York*, 795 F.3d 297 (2d Cir. 2015) — but fails to apprehend that that standard pertains to pleading inferences of discrimination (for which direct evidence may be in short supply), and *not* to the existence of an employer-employee relationship.

If this Court found that Plaintiff's NYSHRL and Title VII claims were subject to dismissal, however, it would be inclined to grant Plaintiff leave to amend his pleading and more fully allege an employer-employee relationship.  As a result, given the obvious logistical complications in dismissing a case with leave to replead while simultaneously granting a motion to transfer, the Court declines to engage in the full merits analysis of Plaintiff's Title VII claim against Pearson Inc., and defers to the court receiving this case upon its transfer.

12

### 2. Defendants' Motion to Transfer Is Granted

In their motion, Defendants seek a transfer of venue under both Title VII's venue provision and § 1404(a).  The Court thus addresses these two provisions in turn.  With regard to Title VII's venue provision, Plaintiff fails to introduce facts supporting a contention that "the employment records relevant to" his claims were maintained or administered in the Southern District of New York, and he similarly does not allege that he would have worked in this District but for the asserted unlawful employment practice; based on his claims, Plaintiff plainly would have continued to work in New Jersey.  Instead, Plaintiff's only conceivable argument for venue in this District under Title VII is that an "unlawful employment practice" was also committed here.

In this regard, Plaintiff alleges in the SAC that given his dissatisfaction with the response from superiors at the Distribution Center, he complained to the "leadership" at Pearson Inc. — the "corporate parent" — including its CEO and Board of Directors.  (SAC ¶ 55).[4]  In response to Plaintiff's email, CEO John Fallon informed him that he had "copied it to Melinda Wolfe, our head of Human Resources," who would "ensure we follow up thoroughly on [Plaintiff's] concerns."  (*Id.*, Ex. A).  Plaintiff states that Wolfe was "chief human resources officer[] at Pearson PLC Greater New York City area."  (*Id.* at ¶ 56).  Finally, Plaintiff notes, "[t]he parent company [ ] failed to correct the behavior at the

---

[4] Plaintiff states that Pearson Inc. has an office at 330 Hudson Street in New York City, and he also states that "Pearson Inc. North America, the parent company to Pearson Education, is located in New York, New York."  (SAC ¶¶ 1, 6).

13

Pearson Education Distribution Center, even though they were made aware of it by plaintiff." (*Id.* at ¶ 57).

Undertaking an analysis of whether Plaintiff has sufficiently alleged that an "unlawful employment practice" was committed in New York would require the same evaluation of the employer-employee relationship that this Court declined to undertake in the context of Defendants' motion to dismiss. Accordingly, the Court will not address whether Plaintiff has technically satisfied this prong of Title VII's venue provision.

That said, the Court has determined that a transfer of venue in the interest of justice is appropriate under § 1404(a). Although Plaintiff's choice of venue is afforded deference, *see Rush*, 923 F. Supp. 2d at 556-57, it is not the only consideration. Here, Defendants present clear and convincing evidence that Plaintiff's choice of the Southern District of New York is outweighed heavily by the other relevant considerations of § 1404(a).

At the outset, the parties do not dispute that Plaintiff's claims could have been brought in the District of New Jersey. Having satisfied this threshold inquiry, the Court evaluates the factors enumerated above to determine whether to grant Defendants' motion.

As Defendants point out, the majority of conceivable witnesses in this case, based on the SAC — Farrell, Vargas, Garcia, Cipriani, Rivera, and other warehouse and office employees, both Hispanic and Caucasian — were employed at the Distribution Center in New Jersey. (*See* SAC ¶¶ 17, 19, 38, 50, 53). According to Tamara Willis, the former "Human Resources Generalist"

14

of Pearson Education (and now in the same position for the company that acquired Pearson Education), Garcia, Cipriani, and Rivera are still employed in Cranbury, New Jersey by Pearson Education or its acquirer.  (Willis Decl. ¶ 8).  Willis, who also works at the Cranbury site, states that she too would "have to testify in this case regarding the allegations … pertaining to the Human Resources department as well as [about] personnel documents maintained by Pearson Education pertaining to Plaintiff."  (*Id.* at ¶ 5).  In addition, Ann Fisher, who "conducted the internal investigation of Plaintiff's complaints," works at a different Pearson Education location also in New Jersey, and likely would be required to testify regarding her investigation.  (*Id.* at ¶ 7).  Finally, Willis indicates, "[a]ll of the documents, materials, records and computers that would be the sources of Pearson Education's proof[] in defending against Plaintiff's allegations and claims in this litigation are located in Pearson Education's former Distribution Center in Cranbury, New Jersey and in Old Tappan, New Jersey."  (*Id.* at ¶ 9).  Accordingly, considerations of the convenience of witnesses, along with the location of documents and sources of proof, militate in favor of transfer to the District of New Jersey.

     With respect to "the convenience of the parties," this factor does not weigh heavily in either direction; while Pearson Education and its Distribution Center employees are based in New Jersey, Plaintiff indicates that he "was and is still a resident of New York."  (SAC ¶ 5).  Relatedly, a consideration of the relative means of the parties might weigh somewhat against a transfer, but Plaintiff has failed to offer evidence on this front.  Along these lines, the Court

15

observes that if Plaintiff "was" indeed a resident of New York commuting to his employment at the Distribution Center in New Jersey, a transfer of his case to the District of New Jersey would not seem to be unduly inconvenient or burdensome for Plaintiff.  *See AIG Fin. Prods. Corp.* v. *Pub. Util. Dist. No. 1 of Snohomish County, Wash.*, 675 F. Supp. 2d 354, 372 (S.D.N.Y. 2009) ("In determining whether the relative means of the parties weighs in favor of a transfer, a court should determine whether a party's financial situation would meaningfully impede its ability to litigate this case in either forum." (internal quotation marks omitted)); *cf. Neil Bros. Ltd.* v. *World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 331 (E.D.N.Y. 2006) ("A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." (citation omitted)).

With regard to the "availability of process to compel the attendance of unwilling witnesses," neither party speaks to such concerns.  In any event, though, this factor "is generally relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship."  *TM Claims Serv. A/S/O* v. *KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402, 406 (S.D.N.Y. 2001) (internal quotation marks omitted).  As neither party has referenced any individuals who might serve as third-party witnesses, the Court finds that this factor does not affect the calculus.

Further, "[a] forum's familiarity with the governing law … is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Posven, C.A.* v. *Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004). With respect to Plaintiff's Title VII claims, "[a]ll federal courts are presumed to be fully capable of applying nationally applicable legal principles." *Royal Ins. Co. of Am.* v. *United States*, 998 F. Supp. 351, 355 (S.D.N.Y. 1998). And, although Plaintiff's action involves NYSHRL claims, "[t]he parties have not indicated that any complex or novel issues of New York law are implicated here, and this Court is confident that the courts in the [District of New Jersey] are exceptionally competent in the application of New York law." *Posven*, 303 F. Supp. 2d at 396. The Court thus accords this factor little weight.

Finally, and crucially, the "locus of operative facts" in this case is New Jersey. The parties do not dispute that the discriminatory conduct targeted at Plaintiff, which Farrell originated and propagated, occurred at the Pearson Education Distribution Center in Cranbury, New Jersey. (*See, e.g.,* SAC ¶¶ 20, 26, 28-29, 33-34, 36-37, 40-42, 44-46, 48-49). Plainly, the acts giving rise to Plaintiff's action arose during his tenure in New Jersey, and the witnesses to that conduct are also located in New Jersey. Thus, a transfer of venue to the District of New Jersey is appropriate in the interest of justice. *See Viacom Int'l, Inc.* v. *Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. Courts routinely transfer

17

cases when the principal events occurred, and the principal witnesses are located, in another district." (internal citations omitted)).

In light of the totality of the circumstances — and in particular, that the relevant witnesses and documents are located in New Jersey, and that the events at the core of Plaintiff's claims occurred in New Jersey — the Court finds that a transfer of venue to the District of New Jersey is warranted in the interest of justice and is appropriate under the factors considered pursuant to § 1404(a).  Accordingly, Defendants' motion to transfer venue is granted.

## CONCLUSION

For the reasons set forth above, the Court DENIES WITHOUT PREJUDICE Defendants' motion to dismiss, but GRANTS Defendants' motion to transfer this case.  The Clerk of Court is directed to transfer this case in its entirety to the United States District Court for the District of New Jersey.

SO ORDERED.

Dated:   October 7, 2016
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge